2002-NMCA-094

52 P.3d 998

**In the Matter of GARRISON P., A Child, Defendant–Appellant.**

**No. 22,314.**

Court of Appeals of New Mexico.

July 16, 2002.

Patricia A. Madrid, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, NM, for Appellee State of NM.

John A. McCall, Albuquerque, NM, for Appellant.

## OPINION

KENNEDY, Judge.

{1} This case presents a number of errors in the conduct of a juvenile proceeding. Garrison P. (Child) was tried for the offense of aggravated battery on Kathleen Thomas (Thomas). At the close of trial, the prosecution sought and obtained leave from the court to amend the delinquency petition to add a new charge in conformance with the evidence adduced in the adjudicatory hearing. We hold that allowing such a motion is not permitted by the Children's Court Rules and that Child was denied due process by the court's action. Also, in conformance with our recently filed opinion *In re Crystal L.*, 2002–NMCA–063, 132 N.M. 349, 48 P.3d 87 (2002), *cert. denied*, (No. 27,513 (N.M. filed June 3, 2002)), we note that the trial court had no jurisdiction to enter a consent decree following the adjudicatory hearing that resulted in a finding of delinquency. We reverse the trial court's adjudication of delinquency and dismiss the petition. The question of the consent decree is therefore rendered moot.

**FACTUAL AND PROCEDURAL BACKGROUND**

{2} The underlying facts of this case involve ongoing bad blood between next-door neighbors. On the day the events occurred, a ball went from the alleged victims' yard into Child's. Phillip Thompson (Thompson), a 17–year–old youth from next door, followed the ball over the fence shortly thereafter. Thompson testified that Child threatened him with the bat, telling him to get out of Child's yard. Once Thompson was back in

his own yard, he and Child got into an argument. Ultimately, Thomas, Thompson's aunt, who had been drinking that day, also got into an argument with Child. Thomas conceded that she had been intoxicated and that she may have used some obscenities directed at Child. Child testified that she yelled racial epithets at him. It is at this time that Child allegedly "popped" her lightly on the cheek with the baseball bat. At most, according to the testimony, this resulted in no more than a red mark on Thomas' cheek. Thompson did not see the bat strike Thomas.

{3} Child went to trial on a delinquency petition alleging that he had committed the delinquent act of aggravated battery against Thomas in violation of the applicable criminal statute. Conceding at the completion of the trial that the charge of aggravated battery against Thomas had not been proven, the State moved during closing arguments for the petition to be amended to charge Child with simple assault against Thompson (a different victim). The court allowed the amendment of the petition to conform with the evidence stating that it was "routinely done." The court found that Child was not delinquent with regard to the original charge, but that he had committed the delinquent act of assault (petty misdemeanor) against Thompson. The court entered judgment finding him to be delinquent on January 25, 2001. At that time, the court indicated that a consent decree might ultimately be the solution to the case, but it would await probation orders in the meantime. The court entered a Probation Agreement and Order on February 15, 2001, followed by a Grade Court Order on March 5, 2001. On March 28, 2001, the trial court entered a Consent Decree in the case, finding that Child had been "found guilty in a bench trial of: *Aggravated Assault.*"

## DISCUSSION

### Defense Counsel Properly Preserved the Issue for Appeal

{4} As the closing argument commenced, the State conceded that there was likely insufficient evidence to find Child delinquent based on the original charge of aggravated battery against Thomas. Thus, in an at-

tempt to "amend" the petition to conform to the evidence, counsel moved to include previously uncharged behavior against a different victim than alleged in the original petition. Defense counsel objected, commenting that the rules did not permit such an amendment. Defense counsel argued that although the "civil" rules permit such action, the "criminal" rules do not. The trial court ruled on the objection, stating that the criminal rules allow such amendments and that they were "routine."

{5} The State argues that the objection did not state "the ground or grounds of the objection or motion ... with sufficient specificity to alert the mind of the trial court to the claimed error or errors, ... [so] that a ruling thereon [could] then be invoked." *State v. Elliott*, 2001–NMCA–108, ¶ 21, 131 N.M. 390, 37 P.3d 107 (internal quotation marks and citation omitted). We hold that Child's objection was sufficient. The objection raised the issue that the applicable rules of the court did not countenance amendments to conform to the evidence. The trial court responded in kind. Proper preservation does not always require that counsel refer to the specific rule violated when making the objection. *See Albertson v. State*, 89 N.M. 499, 501, 554 P.2d 661, 663 (1976) (holding that an objection based on relevancy was specific enough to alert the trial court that the testimony was improper under the rule addressing the admissibility of prior misdemeanor offenses); *cf. State v. Jacobs*, 2000–NMSC–026, ¶ 12, 129 N.M. 448, 10 P.3d 127 (argument concerning joinder based only on jury's potential to misuse evidence and not violation of rule failed to preserve issue).

{6} In addition to the argument that such amendment of the petition violates the court rules, Child argues on appeal that it violated his constitutional right to due process under the Fourteenth Amendment and his Sixth Amendment right to counsel and right to know the nature of the charges against him. Although some of these are matters that form the underpinnings of the law as discussed below, we agree with the State, however, that defense counsel did not preserve these constitutional arguments and accordingly, we do not specifically address them.

**Adding New Charges During Closing Argument Is Prohibited Under Children's Court Rule 10–103 NMRA 2002**

{7} The Children's Court Rules specifically address the amendment of an offense in the petition. Rule 10–103(G) states that "[a]t any time prior to commencement of the adjudicatory hearing in a delinquency proceeding ... the court may allow the petition to be amended to charge the respondent with an additional or different offense." This paragraph is "designed to allow the addition of a new or different offense to a petition if the motion to amend is made *before the adjudicatory hearing begins.*" Rule 10–103 committee commentary (emphasis added). Thus, the rule contains no authority to amend the charging document in a delinquency case after commencement of the adjudicatory hearing.

{8} The State, however, attempts to rely on the provision in Rule 10–103(F) that permits amendments in order to correct mistakes in the pleadings. This subsection states that "[t]he court may at any time prior to an adjudication on the merits cause the pleadings to be amended to cure errors, defects, omissions, imperfections or variances *if substantial rights of the respondent are not prejudiced.*" *Id.* (emphasis added). The State's argument is inapposite to the present situation for two reasons. First, subsection F addresses minor technical amendments to a petition, not major substantive amendments like the addition of different criminal charges. The committee commentary on this subsection states that it is patterned after Rule 5–204 NMRA 2002 of the Rules of Criminal Procedure for the District Courts. Under Rule 5–204(C), amendments to correct mistakes have been granted in adult cases to correct the date of the offense, *see State v. Marquez,* 1998–NMCA–010, ¶ 21, 124 N.M. 409, 951 P.2d 1070; typographical errors, *see State v. Lucero,* 79 N.M. 131, 133, 440 P.2d 806, 808 (Ct.App.1968); and to correct the name of the victim, *see State v. Martinez,* 34 N.M. 112, 119, 278 P. 210, 213 (1929). These are generally considered "amendments to" a charging document that is otherwise adequate. *State v. Roman,* 1998–NMCA–132, ¶ 12, 125 N.M. 688, 964 P.2d 852; *State v.*

*Benally,* 99 N.M. 415, 417, 658 P.2d 1142, 1144 (Ct.App.1983).

{9} Second, substantive changes such as charging a new crime against a different victim have not been allowed because such changes substantially alter the nature of the case before the court and cause prejudice to the defendant. *Roman,* 1998–NMCA–132, ¶¶ 9–13, 125 N.M. 688, 964 P.2d 852 (holding that Rule 5–204(C) prohibited the State from amending the indictment to include a different charge because defendant was prejudiced in that he had no ability to defend himself against the added charge); *State v. Armijo,* 90 N.M. 614, 618–19, 566 P.2d 1152, 1156–57 (Ct.App.1977) (holding that rules of criminal procedure prohibited the State from amending the indictment at the close of the trial to include additional methods of CSP because such amendment substantially prejudiced defendant). Such changes result in an amended charging document. *Roman,* 1998–NMCA–132, ¶ 12, 125 N.M. 688, 964 P.2d 852. Only amendments that are made to conform to the evidence in support of the charge on which defendant was tried are permissible. *Marquez,* 1998–NMCA–010, ¶¶ 20–21, 124 N.M. 409, 951 P.2d 1070; *but see State v. Lucero,* 1998–NMSC–044, ¶¶ 23–25, 126 N.M. 552, 972 P.2d 1143 (holding that State's pretrial amendment of the original indictment charging defendant with willful and deliberate first degree murder, to add an alternative murder theory of depraved mind murder, did not add a different offense and therefore did not prejudice the defendant).

{10} Any addition of new criminal charges not contained in the original petition, made after the conclusion of the evidence and that concern entirely different victims and behavior will substantially and adversely affect the rights of a defendant. Simply put, to allow the State to add to the petition a previously uncharged act against a previously uncharged victim after the completion of the trial and after the witnesses have testified, transgresses fundamental notions of fairness and due process. *See Roman,* 1998–NMCA–132, ¶¶ 13–15, 125 N.M. 688, 964 P.2d 852; *see also Marquez,* 1998–NMCA–010, ¶ 20, 124 N.M. 409, 951 P.2d 1070 ("A variance [to an indictment] is not fatal unless the accused

cannot reasonably anticipate from the indictment what the nature of the proof against him will be."); *State v. Trivitt*, 89 N.M. 162, 169, 548 P.2d 442, 449 (1976) (holding that a criminal defendant is entitled to know the charges against him "and to be tried solely upon the charges against him" (internal quotation marks and citation omitted)). In this case Child defended a different charge entirely than that of which he was found delinquent. Asking him to defend an uncharged and unanticipated crime in closing argument is outside the Children's Court Rules and is unfair.

**The Amended Petition Resulted in Substantial Prejudice to Child**

{11} The State cites to *State v. Gallegos*, 109 N.M. 55, 781 P.2d 783 (Ct.App. 1989), and argues that Child was put on notice of the amended charge because assault is a lesser included offense of aggravated battery. In *Gallegos* our Supreme Court held that "[a] defendant is placed on notice of the potential for being charged with lesser included offenses of an offense charged in the indictment" and that such an amendment does not prejudice the substantial rights of the defendant. *See id.* at 66, 781 P.2d at 794. This argument, however, ignores that (1) simple assault was not a crime charged in the petition not was it inferable based on any facts alleged in petition, and (2) the assault was not committed against the alleged victim of the aggravated battery that was originally charged. Included offenses require it to be impossible that the greater offense could ever be committed without the lesser offense being committed as well. *See State v. McGee*, 2002–NMCA–090, 132 N.M. 537, 51 P.3d 1191, 1195 (Ct.App. 2002); *State v. Santillanes*, 2001–NMSC–018, ¶ 29, 130 N.M. 464, 27 P.3d 456; *State v. Meadors*, 121 N.M. 38, 42, 908 P.2d 731, 735 (1995); *see also Schmuck v. United States*, 489 U.S. 705, 717–18, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989) ("[t]he defendant may not have constitutionally sufficient notice to support a lesser included offense instruction requested by the prosecutor if the elements of that lesser offense are not part of the indictment."). Committing an aggravated battery against Thomas does not presume that an assault would therefore be committed against Thompson.

{12} Here, alleging the existence of a new victim of a separate criminal act altered a material element of the crime with which Child was originally charged and about which he was entitled to notice. *See State v. Mankiller*, 104 N.M. 461, 466, 722 P.2d 1183, 1188 (Ct.App.1986) (holding that the date of the offense was material to the defense where defendant could not have anticipated from the date specified in the indictment that the State would present evidence that the crime occurred nearly two months later). This is basically unfair.

{13} Furthermore, the State's contention that the recited statutory language in the petition "with intent to injure Kathleen Thomas or another" put Child on notice that a charge against Thompson was possible is simply untenable. This statutory language is to provide for transferred intent if the batterer misses his intended victim and hits another. *See State v. Lopez*, 1996–NMSC–036, ¶ 21, 122 N.M. 63, 920 P.2d 1017. Suggesting that taking a poke at Thomas with a bat includes as an offense threatening Thompson with the same bat at a different time under entirely different circumstances is untenable. The State was ill-advised to so argue and the trial court erred in allowing the State to amend the petition.

**CONCLUSION**

{14} For these reasons, we reverse Child's conviction for assault against Thompson, and dismiss the petition.

{15} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Judge, and MICHAEL D. BUSTAMANTE, Judge.