2003-NMCA-005

61 P.3d 851

**In the Matter of MARLON C., a Child, Respondent–Appellant.**

**No. 22,366.**

Court of Appeals of New Mexico.

Oct. 25, 2002.

Certiorari Denied, No. 27,782, Dec. 16, 2002.

Patricia A. Madrid, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Nancy M. Hewitt, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

*OPINION*

PICKARD, Judge.

{1} In *In re Garrison P.*, 2002–NMCA–094, ¶¶ 10, 12, 132 N.M. 626, 52 P.3d 998, we held that permitting the amendment of a delinquency petition after completion of the trial so that the petition charged a previously uncharged act against a different victim was a violation of the Children's Court Rules, a violation of due process, and basically unfair. In this case, we must decide whether the same reasoning applies to an amendment to charge a previously uncharged act against the same victim, even though the uncharged act (assault) is generally a lesser included offense of the offense charged in the petition (battery). We hold that *Garrison P.* controls under the circumstances of this case and, accordingly, reverse.

**FACTS AND ANALYSIS IN *GARRISON P.***

{2} Mr. P. was charged with aggravated battery for hitting Ms. Thomas with a baseball bat. *Id.* ¶¶ 2–3. During closing arguments, the State conceded that it had not proved the charge of aggravated battery against Ms. Thomas, but moved to amend the petition to charge assault against Mr. Thompson, *id.* ¶ 3, because the evidence established that Mr. P. had earlier threatened Mr. Thompson with the baseball bat to chase Mr. Thompson out of Mr. P.'s yard. *Id.* ¶ 2. The trial court permitted the amendment to conform to the evidence, *id.* ¶ 3, and we reversed the trial court, *id.* ¶ 14.

{3} We reasoned first that the trial court in a delinquency matter was not permitted under the Children's Court Rules to amend the petition to charge a new or different offense once the adjudicatory hearing had begun. *Id.* ¶ 7. Nor was the State permitted to amend under the rule permitting amendments to correct mistakes because that rule concerned technical amendments, not substantive amendments that changed the charges. *Id.* ¶ 8.

{4} We reasoned second that permitting an amendment to charge a different offense after the evidence was presented was unfair to a defendant who was prepared to, and did, defend against a particular charge. *Id.* ¶¶ 9–10. In response to the State's contention that assault was a lesser included offense of battery, we pointed out that a simple assault on one victim was not in any way included in a completed battery on another victim at a different time and in a different place. *Id.* ¶¶ 11–13.

**FACTS OF THIS CASE**

{5} The underlying facts of this case involve a domestic dispute between Child and his stepfather. Child was in a room with his little brother and was yelling at him. The stepfather came into the room and saw Child grab a toy from his brother's hands. The stepfather pushed Child away from the younger brother because he thought they would start to fight. Child then confronted the stepfather and said words that the stepfather understood to be an invitation to fight. Child continued to threaten the stepfather. Child's mother entered the room and got between Child and the stepfather. The stepfather began to call the police, Child calmed down and left the room, and the stepfather hung up the phone. Child then came back

and again invited the stepfather to fight. The stepfather again began to call the police, and Child left the residence, threatening to do something to the stepfather's car. The stepfather grabbed Child to prevent him from leaving or damaging the car, and Child responded by pushing the stepfather's face, which left a cut on his face. Both fell over a couch, which resulted in the stepfather being scraped.

{6} Child was charged with being a delinquent child on the basis of one count of battery on a household member: unlawfully and intentionally touching or applying force to his stepfather in a rude, insolent, or angry manner. At the conclusion of the trial, the trial court ruled that the State did not prove the battery charge because the court did not believe there was an intentional blow to the stepfather's face. However, the court said it would allow the State to amend the petition to charge assault on a household member in that Child confronted the stepfather, using threatening language, which Child, in his testimony, admitted doing. Child objected, saying that the State already had the opportunity to prove its case and did not do so. The trial court disagreed and pointed out that assault was a lesser included offense of battery. The trial court allowed the amendment and found Child guilty of assault on a household member.

## ANALYSIS

{7} Initially, the State contends that Child did not adequately bring his contention to the attention of the trial court. Although Child's objection was not as articulate and complete as it could have been, the trial court clearly understood Child's objection when it ruled that it would allow the amendment because it was for a lesser included offense. Under these circumstances, the purpose of the preservation rule was served, and we therefore address the propriety of the trial court's ruling. *See In re Termination of Parental Rights of Sherry C. & John M.,* 113 N.M. 201, 206, 824 P.2d 341, 346 (Ct.App. 1991).

{8} This case requires us to elucidate exactly when a trial court can find a defendant guilty of a lesser included offense. Our conclusion is that it can do so only when

the lesser included offense is factually included in the offense charged so that the defendant has notice that he might be found guilty of the lesser charge and it is not unfair to make him defend against that charge. Under the facts of this case, the lesser included assault of the battery charged would be limited to the stepfather's anticipation of receiving the battery that was alleged to occur when Child pushed him in the face and scratched it. The lesser included assault would not include the earlier invitation to fight accompanied by what appeared to be a fighting stance.

{9} Our analysis begins with the basic proposition that the function of a charge in a criminal case is to provide the defendant with notice of the charges against which the defendant must defend. *See State v. Stephens,* 93 N.M. 458, 461, 601 P.2d 428, 431 (1979), *overruled on other grounds by State v. Contreras,* 120 N.M. 486, 491, 903 P.2d 228, 233 (1995). The analysis then must proceed with an examination of the cases permitting instruction, in cases tried by jury, or findings of guilt in cases tried to the court, on offenses that were lesser offenses of those charged in the indictment, information, or petition. *See State v. Meadors,* 121 N.M. 38, 41–47, 908 P.2d 731, 734–40 (1995); *State v. DeMary,* 99 N.M. 177, 179–80, 655 P.2d 1021, 1023–24 (1982); *State v. McGee,* 2002–NMCA–090, ¶¶ 7–19, 132 N.M. 537, 51 P.3d 1191; *State v. Hernandez,* 1999–NMCA–105, ¶¶ 24–30, 127 N.M. 769, 987 P.2d 1156.

{10} We recently reviewed the jurisprudence on this issue in *McGee,* 2002–NMCA–090, ¶¶ 9–10, 132 N.M. 537, 51 P.3d 1191, and cannot improve upon the summary of it contained therein:

{9} *Meadors* starts with the accepted proposition that a trial court, upon the State's request, may consider an uncharged offense if the statutory elements of the lesser crime are a subset of the statutory elements of the charged crime, "such that it would be impossible ever to commit the greater offense without also committing the lesser offense." *Id.,* 121 N.M. at 42, 908 P.2d at 735. Simply put, a defendant is on constructive notice that he

may have to defend against a lesser included, uncharged offense that satisfies the strict elements test.

{10} However, *Meadors* does not stop at a strict elements analysis. It expands the test to permit a trial court, at the State's request, to consider an uncharged offense as lesser included if

> (1) the defendant could not have committed the greater offense in the manner described in the charging document without also committing the lesser offense, and therefore notice of the greater offense necessarily incorporates notice of the lesser offense; (2) the evidence adduced at trial is sufficient to sustain a conviction on the lesser offense; and (3) the elements that distinguish the lesser and greater offenses are sufficiently in dispute such that a jury rationally could acquit on the greater offense and convict on the lesser.

*Id.* at 44, 908 P.2d at 737. Compared to the strict elements test, *Meadors* takes a flexible, fact-dependent, and less doctrinaire approach. The *Meadors* analysis looks to the elements of the respective offenses, not in the abstract, but as seen through the prism of the charging documents and the facts alleged therein. Notice to the accused is the lodestar. By designating an offense as lesser included "only if the defendant cannot commit the greater offense in the manner described in the charging document without also committing the lesser offense," the Court helps ensure that "the defendant should be fully aware of the possible offenses for which he or she may face prosecution and should have ample opportunity to prepare a defense." *Id.* at 45, 908 P.2d at 738; *see also Hernandez,* 1999–NMCA–105, ¶ 26, 127 N.M. 769, 987 P.2d 1156 ... ("The [*Meadors* ] test aims to avoid the inflexibility of the strict elements test while providing notice to the defendant of the crime against which he must defend.").

{11} Although this review of the law appears to take the position that meeting the strict elements test ends the inquiry, and it is only if the elements test is not met that the remainder of the modified cognate approach must be utilized, we do not believe that to be the case. As *McGee* makes clear, it is usually assumed that a defendant will be on notice to defend against lesser included offenses because of the constructive notice that satisfying the strict elements test ordinarily gives. However, the purpose of the modified cognate approach is to ensure that a defendant is in fact on notice-the lodestar, as *McGee* put it. *Id.* ¶ 10. Moreover, *Garrison P.* involved a potentially greater and lesser included offense situation, in fact the same offenses as are at issue in this case, and that fact alone did not obviate the need to inquire into actual notice. *See Garrison P.,* 2002–NMCA–094, ¶¶ 11–13, 132 N.M. 626, 52 P.3d 998.

■ {12} In addition, it is not entirely clear here that assault is a lesser or necessarily included offense of battery under the elements test. Defendant was charged with battery, which is defined as an "unlawful, intentional touching or application of force to the person of a household member, when done in a rude, insolent or angry manner." NMSA 1978, § 30–3–15(A) (2001). Assault against a household member contains two alternatives: (1) attempted battery and (2) "any unlawful act, threat or menacing conduct that causes a household member to reasonably believe that he is in danger of receiving an immediate battery." NMSA 1978, § 30–3–12(A) (1995). While an attempt may be necessarily included in the completed act, the second alternative of battery is not. It is theoretically possible to complete a battery on a person without prior conduct causing the person to believe the person is about to be battered, for example, if the person is struck from behind. Therefore, assault is not necessarily included in battery in all cases, and it would ordinarily be necessary to use the modified cognate approach in any event.

{13} In arguing that Child was on notice of the lesser offense, the State argues that "Child was on notice of the charges of an attempt to commit a battery." However, it was not an attempt to commit a battery on which the trial court convicted Child. The court found that Child confronted the stepfa-

ther, using threatening language, which is the second alternative of the assault statute.

{14} For purposes of allowing amendment at the State's request, that alternative may or may not be a lesser included offense of battery, depending on the facts of the case. For example, if a person winds up to punch another and then does so with the other looking during the whole episode, there will be a battery and also an assault before it consisting of the threat caused by the wind up and anticipation of the punch. Under the facts of this case, had the court found that Child intentionally hit the stepfather in the face, causing the scratch, an assault consisting of the stepfather seeing Child's hand coming and reasonably believing that a battery is impending would be established and would be a lesser included offense of the battery charged in the petition. However, the threat to fight earlier in the episode is not necessarily included in the completed battery charged in the petition. Our analysis of what is charged in the petition is informed by both the wording of the petition and the facts the State must be relying on to support its theory of the case. *See State v. Darkis,* 2000–NMCA–085, ¶ 15, 129 N.M. 547, 10 P.3d 871. Here, the only battery taking place during the entire episode was that shown by Child's contact with the stepfather's face at the end of the episode. Child was therefore only on notice of the lesser included offense of that battery.

{15} In addition, there was prejudice to Child caused by the lack of notice in this case. Facing a battery charge, Child chose to testify to establish a claim of self-defense. His contention was that the stepfather grabbed him first in a manner that was unprovoked by any need for physical contact at the time it happened, and that Child was therefore defending himself. As it turned out, the trial court found that there was no intentional blow by Child. Had Child been on notice that he was at risk for being found guilty of an earlier assault, his defense strategy may have been different and he may not have chosen to testify, may have focused his testimony on different facts, or may not have testified to facts that caused the court to

comment that Child said himself that his conduct was assaultive.

{16} We will not speculate about what would have happened had Child been facing two charges arising out of the episode. There are no indications of how Child would have defended, and the State points us to no such indications in the record on appeal. As in *Garrison P.,* we think that the assault charge, consisting of the earlier threatening conduct, was sufficiently different from the battery charge, consisting of the later striking of the stepfather's face, that it violated Defendant's rights under *Meadors,* as well as the Children's Court Rules, to convict him of assault under the circumstances of this case.

## CONCLUSION

{17} We reverse Child's conviction for assault and remand with instructions to dismiss the petition.

{18} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and CYNTHIA A. FRY, Judges.